## Klenzing, Appellant, *v.* Allday.

*Waters—Ownership of ice—Pollution of stream—Rights of riparian owners.*

Ice is the property of the riparian owner, and he has the sole right to take it, with the single qualification that it is not to be taken in such quantities as to appreciably diminish the head of the water below.

Where an owner dams up a natural water course and forms on his own land an artificial pond for the production of ice, which he cuts, stores and sells, and he loses the sale of the crop of a whole season because of the contamination of the stream by an upper riparian owner, he is entitled to recover the amount of his loss from the person who contaminated the stream.

Argued Oct. 20, 1915. Appeal, No. 278, Oct. T., 1915, by plaintiff, from judgment of C. P. Franklin Co., Feb. T., 1914, No. 21, on verdict for plaintiff in case of Mary C. Klenzing v. Alcesta B. Allday. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Reversed.

Trespass for the contamination and loss of ice. Before HENRY, P. J., specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for three cents nominal damages.

*Errors assigned* were various rulings on evidence and instructions.

*John W. Hoke,* with him *William S. Hoerner,* for ap-

pellant.—The jury should have been instructed that the plaintiff was entitled to recover the market value of the ice: Stauffer v. Miller Soap Co., 151 Pa. 330; Searle v. Gardner, 22 W. N. C. 73; Lawton v. Herrick, 83 Conn. 417.

*O. C. Bowers*, with him *T. Z Minehart,* for appellee.— Riparian owners have no ownership of running water, and no right to divert or sell it for general use, and are limited in their own use of it to ordinary domestic purposes: Philadelphia, Etc., Railroad Co. v. Pottsville Water Co., 182 Pa. 418; Penna. Railroad Co. v. Miller, 112 Pa. 34; Haupt's App. 125 Pa. 211; Clarke v. R. R. Co. 145 Pa. 438; Filbert v. Dechert, 22 Pa. Superior Ct. 362.

The right of property in the ice, claimed by the plaintiff, is too uncertain, temporary and fugitive to commend it to sound reason: Brown v. Cunningham, 82 Iowa 512; Barrett v. Rockport, 84 Me. 155; West Roxbury v. Stoddard, 7 Allen 158; Gage v. Steinkrauss, 131 Mass. 222; Hittinger v. Eames, 121 Mass. 539; Powell's Ice Co. v. Davenport, 149 Mass. 322.

OPINION BY ORLADY, P. J., July 18, 1916:

The controlling facts in this case are not in dispute.

The plaintiff, is the owner of a tract of land, through which flows a small stream, in a natural water course. For the past twenty-five years, she has maintained on this property, an artificial pond and a house with a capacity of 1,600 tons, for harvesting and storage of the ice gathered from the pond, which she, in proper season sold in the vicinity. In the fall of 1912, the pond and ice house were prepared for protecting and gathering the ice crop for the coming winter. In January, 1913, when the ice was beginning to form she was notified by the public health official, that the pond was contaminated and polluted by sewage from a disposal plant owned by the defendant, who was an adjoining and

upper riparian owner on the stream, and that the sale of ice from the pond was prohibited, until this dangerous condition was remedied. This disposal plant or septic tank, was a concrete structure built by the defendant on his land, and was supplied with sewage through pipes which became broken, whereby the sewage was discharged into the stream, a short distance from the plaintiff's property line.

This action of trespass was brought to recover damages for the pollution, with sewage, of the artificial ice pond and consequent loss of the ice crop for that season. The trial judge was of opinion that "a plaintiff has no right to take ice from the stream for the purpose of selling it" and but nominal damages could be allowed, if the jury found that sewage was permitted to run into the stream from the vat or plant described in the testimony. In refusing a new trial on the return of a verdict for nominal damages, he held "the plaintiff had no ownership or property in the ice in question, which could be made the subject to a suit for substantial damages." On the trial, evidence was excluded, on objection by the defendant, to show the average thickness, yield, and selling price of ice on the pond for the preceding ten years.

The question raised, does not involve the plaintiff's right to use the water flowing in the stream, as that is conceded, but in the right to harvest and sell the ice which is formed by natural freezing. The harvesting of ice from creeks, lakes and artificial ponds had been a recognized industry in this State for many years before artificial ice was manufactured, and is still conducted to a large extent in competition with artificial production.

The Act of May 8, 1876, P. L. 137, clearly recognizes the ownership of "ice, forming, formed or being upon any pond, stream, river, creek or canal owned or leased, in whole or in part for the production of ice for sale, by making it a misdemeanor, to wilfully injure or defile

such ice by casting or throwing upon it any timber, stone or other substance. The Act of April 29, 1874, P. L. 73, which was enacted before the manufacture or use of artificial ice, authorized the formation of corporations for "The supply of ice to the public"—which was enlarged by the Act of June 10, 1893, P. L. 435, to include the modern systems of refrigeration and cold storage.

The right of property in formed ice was clearly recognized in Stauffer v. Miller Soap Co., 151 Pa. 330, and in Searle v. Gardner, 22 W. N. C. 73, in which latter case it is said, "The ice is the property of the riparian owner, and he has the sole right to take it, with the single qualification that it is not to be taken in such quantities as to appreciably diminish the head of the water below." The defendant is the immediate upper riparian owner, and defends the pollution of a living stream of water on the theory that his neighbor does not own the natural ice in the stream below him.

In Gould on Waters, Section 191, citing many authorities, it is said—In case of a nonnavigable stream, we are satisfied, that both reason and precedent support the doctrine that the riparian owner has the right to use all the water which it is necessary for him to employ for any purpose, and to cut and remove the ice which may form upon the stream adjoining his land, in any quantity or to any extent for his own use, or to store for sale, provided he does not, by so doing, diminish the flow of water, below what is required to successfully operate or run the mill below."

The rule is stated to be, "The bed of an unnavigable fresh water stream, pond or lake, is the subject of private ownership, and the owners of such bed have the exclusive right to harvest the ice forming thereon. The right of a riparian owner to have the stream which bounds or goes through his land flow in its natural state, regards the quality as well as the quantity of water, and a lower riparian owner may maintain an action for damages against persons above him, or re-

strain them from polluting such streams to the injury of the ice which he is entitled to gather therefrom. The general rule is that the title to unharvested ice is in the owner or lessee of the water on which it forms: 15 Cyc. 908, and this is sustained by many cases.

In Stauffer v. Miller Soap Co., 151 Pa. 330, the judgment was reversed, but the case clearly shows, that court and counsel, considered the title to the ice as being in the plaintiff, the court saying—The only question in this case about which there appears to be a serious controversy was in the value of the ice crop destroyed, and this involved an inquiry as to its quantity. The correct rule for ascertainment of the damages is given, and it includes such evidence as was rejected in this case, under the first, second and third assignments of error. The meagerness of the testimony as to thickness of the ice, its market value and amount, was due to the exclusion of the testimony offered for that purpose.

The cases relied on by the appellee, are ones where the lower riparian owner complains of a diversion or diminution of volume of the water to which he is entitled, and do not apply to the question involved here, where there is no challenge to the title to the land of the plaintiff, or the water in the stream as it passes through her land, or any complaint by a lower riparian owner. The injury caused by allowing sewage to drain into the stream while flowing full, would be a substantial one, and we see no reason why the pollution of the ice formed thereon would not be equally an actual injury if clearly proved by competent evidence.

In Filbert v. Deckert, 22 Pa. Superior Ct. 362, as stated by Judge PORTER, the question was—the only injury to the property of the plaintiff suggested by the evidence was the diminution of the water power and the question raised in this case was not before the court in any form.

The judgment is reversed, and a venire facias de novo awarded.